Appeal No. 22-1764 Broadcom Corporation v. Netflix, Inc. Mr. Young, you have three minutes for rebuttal whenever you're ready. May it please the Court, Dan Young for Appellant Broadcom Corporation. There are four issues with respect to the Board's final written decision which are at issue in this matter. The first is the Board's claimed construction of the term DriveServer, which the Board construed as a device that provides storage services to a video-on-demand system. The effect of this construction is that it takes the term DriveServer and makes it impermissibly broad. If you take the three components of that construction, the first is a device, which is a generic nonce word. It doesn't provide any structure. It's just a very generic term. Storage services, any storage device can provide storage services. Whether that's a memory buffer, floppy drive, thumb drive, those all can provide storage services. The last part of the construction is to a video-on-demand system. That's taking a limitation from the specification and reading it directly into the claim term because the claim term has almost no structure to it without that. The other portion... Please do your best intrinsic support that a DriveServer must be a computer with server capabilities. Can you just point me to your best support for that? Yes, Your Honor. The Board relied on the Figure 2 disclosure as part of the anchor to its construction. In that description of Figure 2, the patent specifically says, the present invention proposes bulk drives on capable servers. You have a bulk drive and it's on a server. I guess when we look at Figure 2, there's something called Disk Library 104, which comprises one or more DVD drives and associated disks. That box, 104, seems like the only box in the Figure 2 that could possibly correspond to the so-called DriveServer. That seems to be confirmed at Column 3 where it talks about, at Line 26, the DVD DriveServer. Again, we're discussing Figure 2 here, and the DVD DriveServer, quote-unquote, would correspond to Disk Library 104, where that box says DVD ROM drives and disks. I guess what I see here is Figure 2 telling me that the DVD DriveServer is a library of disks. What's wrong with that understanding of the intrinsic evidence? Your Honor, I think what I would say is that a DriveServer can absolutely have a number of disks and associated drives. In fact, all DriveServers do. But not all collections of disks are necessarily a server. That distinction shows up very clear in the prior art, which is the Baker reference, which solely is a collection of disks that are individually connected to the server. But if the spec equates the DVD DriveServer, quote-unquote, with Disk Library 104, then what that means is DVD DriveServer is essentially a disk library comprising one or more DVD drives and associated disks. So, Your Honor, the patent uses the term disk library just twice, and it's the very beginning of the description of Figure 2. It also uses the term DVD DriveServer. But just a person of ordinary skill in the art looking at those two terms would be very clear that a disk library is not necessarily limited to DVDs, but then the DVD DriveServer is a type of server with a disk library. In that case, it would have DVD drives on it. So those terms just on their face are not synonymous. When a specification uses two different terms, then the presumption is that they have different meanings. Clearly, disk library and DVD DriveServer will have different scopes. Okay, so then I guess it's your view that Claim 1 excludes Figure 2? No, Your Honor. If Figure 2 is just, and what we said to the board is, if Figure 2, just as written, is only a collection of disks, not on a server, then the answer is yes. That it does exclude Figure 2? If it's just disks. Let's assume that's what it is because that's what it describes at Column 2 as Disk Library 104 being. Well, it's a disk library, but then in the rest of the specification, we'll say DVD DriveServer. So that disk library can absolutely be on a server. And so when the patentee wrote Claim 1, they had a narrower scope with respect to library versus server, but then also had a... Is the term DriveServer a term of art? Did you point to any kind of technical dictionary that defines the term DriveServer? I'm not talking about server or drive, but I'm talking about the two words right together, DriveServer. The term DriveServer, there's no evidence of any extrinsic dictionary definition saying that it's specifically a DriveServer. Now obviously in Netflix's own petition, they cite dictionary definitions with approval that say a drive is short for disk drive or tape drive, and a server is a computer that provides services to another computer. Do you also agree that Figure 3 doesn't limit the DriveServer to a computer server? When you look at Figure 3 and the patent? Your Honor, I think that's the issue though. A server, as a person with a skill in the art would understand, is a computer. It has some processing capability. And in Figure 3, it uses the term DVD-ROM server. Well, ROM is... You have to have some processing capabilities in order to effectuate that server. So in Figure 3, it provides a list of sources of devices. It has satellite TV as an example, cable TV. That's all in the column that's described in Figure 3. All of those can be source devices. But in the claim, the claim specifically said DriveServer. So they just had a broader disclosure, and they had a narrower term that they claimed is part of Claim 1. And the ramifications of this is clear, because the board, in its definition of claim construction of DriveServer, said that a single DVD drive can be a DriveServer. And then what that does is the term DriveServer, drive modifies server, and what you've done now is you've taken out the server piece, and you just made it drive. So instead of Claim 1 saying a DriveServer, configure 2% of plurality of compressed devices, under the board's construction, it just says a drive. And that's impermissible, because you want to give meaning to both terms, both words in the term DriveServer. You want to set it with a drive. I guess if the spec said, you know, there's this Box 104, and Box 104 is a video library. And then later in the spec, it said Box 104, the DriveServer. Then, you know, in that way, the patent would have informed us that when it uses the term DriveServer, it's talking about a video library. Would that be fair to say? This is a hypothetical, of course. Your Honor, I think what I'd say, if the specification, in your hypothetical, the specification made it clear that a disk library is the same as a DriveServer, then the answer would be yes. But that's not what is going on in the specification here. It uses different terms. I mean, the inventor clearly could have wrote down in Claim 1 and said a disk library, right? They could have used the term disk. They had it in the specification. They could have used it in the claim. But they used a different term. They used the term DriveServer. And they didn't use a DVD DriveServer or a DVD ROM server. In this case, they used a broader term, DriveServer. And, you know, in the patent itself, it shows that the inventors understood that drives are on servers because it says bulk drives on capable servers. And in Figure 1, which is background, it shows a computer having, in that case, CD drives. Again, that's prior art. But it shows drives on a server. And so if the... This patent is expired, right? Yes, Your Honor. Okay. Is there only one pending litigation going on with this patent? Yes, Your Honor. Okay. Do you want to talk about some other issues? Yes, Your Honor. So regardless of the claim construction of the term DriveServer, there's three other issues within the board's final written decision that are, in our view, are in error. And the first is that the video library in Baker, which, again, in contrast to a DriveServer, the video library in Baker is just that. It's the number of disks that are individually connected to VideoServer 12. Just like they're like a periphery, like a keyboard or a mouse. They're just directly connected. And all the functionality comes from the VideoServer 12. And, in fact, there's many instances, and they're all cited in the brief, where the Baker reference talks about the VideoServer going and fetching, obtaining, receiving a single copy of the material or the video from the video library, and then taking it, replicating it in the network interface 18, and then distributing it to the various decoders. So the claim one requires a DriveServer configured to present a plurality of data streams. And the video library in Baker doesn't do anything. It stores data. And the VideoServer 12 then takes the video from the video library and then puts it into its own internal memory and then distributes it. So the video library in Baker is not configured to present a plurality of streams because the other disclosure in Baker says that because of the I.O., in order to save I.O. space, they only take one copy. Well, hypothetically, you could be pulling multiple different movies out of that Baker video library for multiple different viewers and do it at the same time. And in that way, the Baker video library would be presenting multiple streams, wouldn't it? In that case, yes. But the rest of the limitations also then, as Netflix has construed it, they have said that the decoders that receive the streams from the VideoServer, they say that it's all one description. It goes from the one copy, it goes from the video library to the server. The network interface then replicates it and sends it out to all the viewers on the subscriber list. But what the subscribers are receiving is only generated from one copy on the video library. So the antecedent basis of the term compressed data stream, as it flows through the claim, would then preclude the reading that you're providing in your hypothetical. And just very quickly, I know I'm getting into my rebuttal time, but also what the decoders receive has to be from the VideoServer. And so, or in this case, the control server. So in Baker, the... There's just one quick question before you sit down. The claim talks about a first portion of a data stream going to a first decoder and maybe a second portion of the data stream going to a second decoder. Yes, sir. Can you give me an example of what's being accomplished in that claim? I mean, what is the advantage of this? If you're sending all portions of a data stream to one decoder and all portions of that data stream to another decoder because both of those users attached to those two decoders want to watch the same movie, am I missing something about how that limitation operates? What you're referring to is the wear-in limitation at the very end of the claim. And there it says, again, the antecedent basis is the data stream and it's a portion of a single stream. And that's where Baker doesn't disclose that because what he discloses is replicating streams. Every decoder is receiving a copy of the original stream. And so the portion limitation is directed to the functionality of the control server. So, like, one stream of the movie Top Gun, only one portion of it is going to get chopped off and sent to one user's decoder and then a second separate portion is going to be chopped off and sent to a second user's decoder?  I know, Your Honor. Obviously, you don't have to claim every aspect of the functionality of the system. I just want to understand this aspect. So this aspect, then, in this particular aspect of this claim... What I just described, is that your understanding of what the claim calls for? A single stream of Top Gun, one portion gets chopped off, gets sent to decoder A, and then a separate portion gets chopped off and gets sent to decoder user B. Yes, Your Honor. That's what the claim calls for. Right, but portions can be an audio portion and a video portion. Let's put that to the side. That's not part of this claim. The audio-video components are not portions. The patent specifically talks about portions. Let's put that to the side, though. Now we're left with this other kind of strangely fangled claim where we're chopping up portions of one stream of Top Gun and sending off different portions to different users. I don't think that's what the claim anticipates, Your Honor. Okay, what does the claim call for? Well, the claim, the only mention of portions in the specification talk about a portion of a stream being an audio portion and a video portion. And those will go to an audio decoder and a video decoder. And the MPEG-2, which is mentioned, that standard is mentioned in the specification, specifically talks about two different decoders, one for audio and one for video. So I believe that's what the claim is referring to. Okay, thanks. Can I just ask one quick question? Yep. Why doesn't Figure 6B of Baker disclose the different portions of the data streams being sent to multiple users? Yes, Your Honor. And the same problem with Figure 6B is the same problem with Figure 5. Those are copies. So every stream, every user, every decoder is getting a separate stream that's replicated, that's by the network interface 18 in Baker. They take the single copy from the video library. It goes to the memory of the video server 12. It goes to the network interface. And then it's replicated. And their expert has said they're getting the same content, but it's a different stream. So it's not portions of the same single stream. They see the whole movie, not just part of it. Is that what you're saying? In Baker. In Baker. I'm sorry, I didn't hear that. In Baker, they watch the whole movie. They watch a copy. And every user watches the entire movie, but it's a copy, and it's not the single stream. They're watching the same movie. Absolutely, Your Honor. And that's what their network expert admitted. It's the same content. It's a different stream. Okay. Thank you, Your Honor. May it please the Court. Harper Batts on behalf of Apelli Netflix. I'd like to start with the claim construction issues first, about DriveServer. I think it's clear that both the intrinsic record and the extrinsic record support the board's construction of DriveServer. That includes the claims, every embodiment. So there's three embodiments of the 375 patent, figures 2, 3, and 5. Also, the file history, as well as the inconsistent claim construction positions by Broadcom previously that we noted. And lastly, the extrinsic record and some of those dictionary definitions that you referenced, Judge Chin, I'm going to touch on those. So I don't want to repeat too much the discussion of figure 2, but I just want to note that figure 2 is a preferred embodiment. And counsel, in the final written decision at page 13, the final written decision noted that counsel for appellant at the hearing stated that figure 2 was not embodying. So here, it seems like there is some uncertainty as to whether it was embodying or not embodying in their contention here. But below, they said that was not an embodiment covered by the claims. And as Judge Chin noted, the column 2 discussion makes clear that disk library, there's three components to this alleged invention. The control server, the decoder devices, and then the DriveServer. And it's clear that the disk library is the example of a DriveServer. So I think counsel mentioned whether disk library and DriveServer are synonymous. That is not the question here. It's whether disk library is an example of a DriveServer. And in fact, the column 3 discussion that Judge Chin pointed out, I believe it's in lines 24 to 26, makes clear that it's talking about a DriveServer in the context of disk library figure 2. On figure 5, I just note that counsel, there's no addressing that figure. We addressed it in our briefing. Appellant's counsel never addressed that figure 5 as another embodiment that they claim is not covered, that would not be covered under the definition of DriveServer. So that stands unrebutted. I do think... So the takeaway is there's supposed to be an extremely high threshold for excluding a preferred embodiment that this court has stated previously. And appellant has made no effort to overcome that high standard. And then I do want to touch the file history because we addressed the file history on pages 45 and 46 of our brief. And there was two separate occasions in which the examiner did rejections on prior part, the Sakeen and the Durana references. And in both situations, the examiner pointed to mass storage devices for VOD services as being the DriveServer. So they've accused us of this litigation position about this claim term. But when you look it back, and under Phillips, you look at the file history and what was discussed and how the examiner and the applicant understood the term. The examiner understood... The applicant never agreed with that on the record, right? Yes, Your Honor, I agree with that. This is not a question of... And there's not just a vowel here or something. This is a question of, is it reasonable to have a construction of DriveServer that would be a mass storage device? And they're saying that's absolutely not reasonable at the time nobody would think that. But the examiner themselves did two different rejections. And they did... They never did... They didn't overcome those rejections. They could have easily overcome those rejections by simply saying, well, that's not what we mean by DriveServer. It's not just a mass storage device. It has to have this computer functionality. So while it's not a disclaimer, it's a vowel, I think it's still instructive as to what... It's a vowel on column four where it talks about bulk drives on servers. Yeah, I think that... It sort of suggests that maybe what we're talking about here is, you know, a server that is not quite the same thing as the bulk drives themselves. So it still has to have the three components because if we go to that discussion on column four, it says the present invention proposes bulk drives on capable servers with minimal cost in the remote decoders. So as Judge Gianetti noted in the final written decision, that's addressing the three components. The DriveServer component, which would be the drives, the bulk drives, and then a control server, and then the decoding devices. So I don't think that's inconsistent and that doesn't resolve the remaining issues on the specification and how the specification should be read, including the other embodiments that were not addressed by Broadcom. And then I do also want to touch on the extrinsic evidence, at least briefly, because Your Honor asked whether there are any dictionary definitions of DriveServer. And there were not any dictionary definitions of DriveServer submitted, but there were dictionary definitions of disk server submitted. And I do think those are telling in terms of, again, the circular argument that's raised by Appellant here is that the term server has to mean computer. Even though it's not in the specification and it's not in the extrinsic evidence, they're saying it has to mean computer, a server has to mean computer. And if we look at, for example, the Microsoft Press Computer Dictionary at appendix page 1030 and 1035, the term is disk server, not drive server, but that term was defined as a node on a local area network that acts as a remote disk drive shared by network users. And then it goes on to distinguish a file server from a disk server and says a disk server functions as a storage medium on which users can read and write files. There's no reference to computer functionality in that definition of disk server. And there's subsequent definitions, the IBM Computing Definition, IBM Dictionary for Computing on appendix 1043 and 1045, which also talks about a disk server as being a high-capacity disk storage device that each personal computer on a network can access and use. So again, there's no computer functionality mentioned for the term disk server. So this, I guess, tautological circular argument that server must mean computer is refuted by not only the specification itself and the referred embodiments of the specification, but also the extrinsic evidence. And if there's no other questions on drive server, I'd like to turn to the other arguments. I'm sorry. Yes. Can you walk through Baker and how Baker maps onto this claim? Sure. So there's the video library of Baker. This is the sticky part of your appeal. This is the sticky part. Exactly how Baker's disclosure maps onto the claim, even as construed by the board. I'd like to start with, as a first point, I would note that this is supposed to be under substantial evidence, the remaining arguments that Hellman contends. And really what I heard here today was a debate about the evidence below rather than whether there was substantial evidence for the findings made by the board. And if we look at Baker, and I think that the figures to really focus on are figures 5, 6A, 6B, and 7, and those were the ones discussed. There's a couple different arguments here. One is that you need to have multiple streams of the movie Top Gun being called from the video library that then get routed through the server and then end up to the individual decoders. And that's not what Baker does. Baker will get one copy of Top Gun from the video library and then at something called a network interface will make multiple copies of that one copy of Top Gun and then send off those different copies of Top Gun, different streams, to different decoders. And so if that's how Baker works, then there's a few different points in there that Broadcom is making that says, okay, that kind of disclosure does not line up with the claims in terms of requiring multiple streams to be presented by the video library to have the server for the decoder to receive those multiple streams from the server and then ultimately having portions of a single stream running off to different decoders. Yeah, and I'd like to turn to figure five in the synchronization group discussion of Baker because I think that's the most instructive portion for your question here. If you look at figure five, you see that it identifies separate streams. So you have the streams one through four and then basically an N at the bottom. And then the discussion continues on figure 6A and 6B which show then the synchronization groups for a particular stream. So what you see in figure 6B, at time period one, you have a single stream that is being conveyed. So let's say, I believe Top Gun was your analogy. So an example. So in figure 6B, you have a single stream being conveyed for the time period one users, to users R1, 2, 3, 4, 5, and 8. While you have a second stream of Top Gun for time period two with users six and seven and then a third time period with other users and so on and so on. And what Baker teaches is that you can fall out of these different synchronization groups. So if you fast forward or if you pause, you can move from one synchronization group to another. But what is clear is that there are multiple streams of Top Gun. Each of those synchronization groups is a separate stream. And that was a finding by the board supported by the evidence below. And then within a single synchronization group, so let's say the T1 synchronization group is an example, you have a single stream that is being sent to those users and that's consistent with what is shown in figure 5. Is it a single stream or is it the same content being sent via individual streams? Well, I would say, Your Honor. Or is it a literal technical matter? I understand what the picture is showing you, but the picture is just a, you know, basic representation of what is actually happening at a technical level. Well, I guess I have to start with the teaching of figure 5 of Baker specifically identifies them as a single stream for a particular time period. So Baker is teaching it as what would be understood as a single stream. And then we explained, and as credited for our expert's explanation, you then have that single stream where then it goes through the interface that's shown in figure 7 and then you have copies of that stream, but it's still the same stream. And you have the copies of the stream. And the board credited the explanation of our expert on the copies of that stream that are occurring from figure 7. And in terms of the interface device that you were asking for, I would note... I just want to go to that real quick. So the board noted on page 28 of its final written decision and held that the network interface device is a subsystem that operates under the control of the video server. So that was a factual finding made by the board and it was supported by... Actually, it cited to patent owner's position   the network interface device is a subsystem that operates under the control of the video server. As well as the expert testimony and Baker itself. So it's operating under... Substantial evidence is there. So it's not a question of whether it was a correct... They're basically asking whether the board correctly decided the arguments versus whether substantial evidence supports those arguments. And there's been no argument in their briefing or here today that there isn't substantial evidence to support that finding. Can you briefly touch on the inconsistent position on the claim construction that you had flagged when you started your argument? Sure. So in the Amazon litigation Broadcom took an extremely... Appellant took an extremely broad view of the term drive server. And we outlined that on pages 36, 37, and 40 of our brief. And continually said that drive server would encompass a large number of devices. And I want to go to appendix pages 10, 19, and 10, 20 for that. Just to address them with you together. And I guess I would first note that Broadcom's briefing didn't address this at all. So we raised this. And even in the reply brief there was no response to our arguments on this. But if you look on starting on appendix page 1001 and then 10, 18 and 10, 19, and 10, 20 what we see is on the top of 10, 19 when Broadcom's position that contrary to Amazon's assertions the specification does not consistently describe or limit the present invention to DVD drives rather than referring to DVD drives only the specification employs more generic terms like source device or server. So they were arguing for a very broad construction. And then below that they say as such the specification's use of the present invention does not consistently limit the drive server to DVD drives as Amazon asserts but instead expressly teaches that sources other than DVD drives may be used. So they had a very expansive view previously as to the term drive server versus now they're arguing that it should have a narrowing view. So that's our view of why it's an inconsistent position. If there's no further questions I'll... Thank you. Thank you. Mr. Young? Yeah, two minutes. Thank you, Your Honor. I'll try to deal with these as quickly as possible. The first is the term disk server and in that description of disk server it talks about a node. A node is a computer and if you look at our expert's testimony that even if you have a node on a network there has to be some processing capability. So that is consistent with our position. With respect to the figures five and six A of the Baker reference those are replicated so it is different streams. It is the same content. And the idea that the network interface it certainly operates under the control of the video server. There's no question that's the case. But it is a separate component and they have Netflix has mapped the control server to video server 12 not video server 12 and network interface 18. They are separate components and all the streams that the various users get all come from the network interface. That's where they are generated. That's where they are created. Netflix council mentioned this idea of figure five. Figure five also shows an example of a what could be a drive server connected so it's really no different than what was shown in figure three. And lastly the Your Honor had raised the question about the inconsistent claim construction positions. The board did not cite to that as part of its decision. So we didn't address it in the briefing. Appendix 699 shows the court's construction of that term. And it makes clear the court says the specification discloses embodiments in which the server provides content from sources other than DVD drives. The issue in that case was DVD drives versus drive. And obviously Broadcom took a position plainly under meaning drive doesn't just mean DVD drive. So it was a different issue and our position today is consistent. So Your Honor if there aren't any other questions. Some claims will survive this IPR. I'm sorry Your Honor? Not every claim was challenged. But all the asserted claims in the co-pending litigation are part of this appeal? I'm not counsel for the underlying litigation but yes that's my understanding. Thank you. Case is submitted.